IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JHOANNA CO,

No. CV 09-776-MO

Plaintiff,

OPINION AND ORDER

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICE, ET AL,

Defendant.

MOSMAN, J.,

Defendant United States Citizenship and Immigration Service ("USCIS") filed a motion

to dismiss plaintiff Jhoanna Co's Petition for Review of Final Agency Action. (#19.) For the

reasons set forth below, I GRANT the motion and dismiss Miss Co's petition.

## BACKGROUND

I.    <u>Personal History</u>

Miss Co is a citizen of the Philippines. (Compl. (#1) ¶ 4.) Miss Co's father, Benjamin Co,

is also a citizen of the Philippines. (*Id.* at ¶ 3.) In 1981, Miss Co's aunt, a United States citizen,

filed a Petition for Alien Relative ("1981 Petition") so Mr. Co could receive a visa.[1] (*Id.* at ¶ 17.)

---

[1] Congress allows aliens to become legal permanent residents through multiple avenues.
For example, a relative who is a U.S. citizen or legal permanent resident may file a Petition for
Alien Relative so the alien can receive a visa based on the familial relationship. *See* 8 U.S.C. §
1153(a). When the relative files, the alien is grouped into a "preference category" based on her
relationship with the petitioning relative. *Id.* Each preference group is subject to a numerical limit

Miss Co's aunt listed Mr. Co as the primary beneficiary of the petition, and Miss Co as a derivative beneficiary. (*Id.*) The 1981 Petition sought to classify Mr. Co as the brother of a U.S. citizen in order to obtain a fourth-preference visa for Mr. Co. (*Id.*); *see also* 8 U.S.C. § 1153(a)(4). Miss Co was only seven years old at the time and was eligible to be a derivative beneficiary based on her relationship to her father. (Compl. (#1) ¶ 17); *see also* 8 U.S.C. § 1153(d).

Under § 1153(d), a spouse or child of a beneficiary who is not otherwise entitled to a visa is entitled to the same preference status and order of consideration as her spouse or parent. Persons benefitted under this section are often called derivative beneficiaries. The term "child" is defined as an unmarried person under twenty-one years of age. 8 U.S.C. § 1101(b)(1). If the daughter of a beneficiary reaches age twenty-one before a visa number becomes available, she is no longer eligible to be considered a "child", and therefore is no longer eligible to be a derivative beneficiary based on the parent-child relationship. *See Bolvito v. Mukasey*, 527 F.3d 428, 435 (5th Cir. 2008). This is referred to as the child "aging out." *See id.* at 436. The parental relationship must persist both when the petition is filed and when a visa becomes available for the derivative beneficiary to be admitted to the United States. *Id.*

The USCIS gave the 1981 Petition a priority date of August 4, 1981. (Compl. (#1) ¶ 17.) A visa number became available to Mr. Co in 2002. (*Id.*) By that time, Miss Co was over the age of twenty-one and no longer eligible to be a derivative beneficiary based on her relationship to Mr. Co. Miss Co came to the United States on an employment visa in 2005. (*Id.* at ¶ 18.) In 2008,

---

on the visas that can be issued in a given year. *Id.* Preference categories exist for spouses, offspring, parents, and siblings. *Id.*

Mr. Co filed a Petition for Alien Relative ("2008 Petition") and listed Miss Co as the primary beneficiary.[2] (*Id.* at ¶ 19.) The USCIS gave the 2008 Petition a priority date of May 7, 2008. (*Id.*)

During an interview with USCIS in 2008, Mr. Co argued that the priority date from the 1981 Petition should be applied to his 2008 Petition. (*Id.*) The USCIS disagreed and stated that Mr. Co could not transfer the earlier priority date to his petition. (*Id.*) Miss Co advanced the same argument after she filed an Application to Register Permanent Residence or Adjust Status (Form I-485) in 2008.[3] (*Id.* at ¶ 21.) The USCIS again stated that Miss Co could not use the 1981 Petition date in her efforts to obtain a second-preference visa.[4] (*Id.*) Without the benefit of the earlier priority date from the 1981 Petition, Miss Co cannot demonstrate that there is a visa number currently available for her. (*Id.*) The USCIS denied Miss Co's Form I-485 in 2009. (*Id.*)

## II.    <u>BIA Decision</u>

Miss Co acknowledges that there is a Board of Immigration Appeals ("BIA") decision factually and legally on point. (*Id.* at ¶ 9); *see also Matter of Wang*, 25 I&N Dec. 28 (BIA 2009). In *Wang*, the BIA addressed the application of § 1153(h)(3) to facts analogous to those in the

---

[2]    The 2008 Petition sought to classify Miss Co as the unmarried daughter of a U.S. permanent resident in order to obtain a second-preference visa for Miss Co. (Compl. (#1) ¶ 19); *see also* 8 U.S.C. § 1153(a)(2)(B).

[3]    The Application to Register Permanent Residence or Adjust Status, or Form I-485, allows an applicant to adjust her immigration status, but only if an immigrant visa number is immediately available.

[4]    In addition to the numerical limits on the amount of visas issued in a year for each preference category, there are limits on the percentage of visas that can be allocated to any single country. Due to these limits, aliens from China, India, Mexico, and the Philippines face long delays because of the number of petitions filed. For example, when Miss Co filed this action in July of 2009, visas were only available for aliens classified in the same category as Miss Co if their visa petitions had a priority date of April 1, 1998 or earlier.

instant case. Ms. Wang was ten years old when her aunt filed a fourth-preference visa petition for

Ms. Wang's father. *Wang*, 25 I&N Dec. at 29. Ms. Wang was listed as a derivative beneficiary

because of the parent-child relationship with Mr. Wang. *Id.* By the time Mr. Wang was admitted

to the United States, Ms. Wang was twenty-two years old and no longer qualified as a derivative

beneficiary. *Id.* Mr. Wang filed a second-preference visa petition for his daughter once he was

admitted into the United States. *Id.* Mr. Wang sought to apply the priority date from the original

petition filed by Ms. Wang's aunt to the petition he filed. *Id.* at 29-30. The BIA held that §

1153(h)(3) did not allow Ms. Wang to apply the priority date from her aunt's petition onto the

petition filed by Ms. Wang's father. *Id.* at 30. The effect of *Wang* is to prohibit the use of the

1981 Petition priority date on the 2008 Petition. (Compl. (#1) ¶ 9.) Miss Co asserts that the *Wang*

decision is erroneous and not entitled to deference. (*Id.* at ¶ 22.)

   The USCIS filed a Motion to Dismiss and argue that *Wang* was correctly decided. (Def.'s

Mot. to Dismiss (#19) Ex. 1 at 2.) USCIS argues that the Court should dismiss Miss Co's petition

because the Court cannot grant the relief she seeks. *Id.*

## DISCUSSION

   If a complaint fails to state a claim upon which a court can grant relief, it must be

dismissed. Fed. R. Civ. P. 12(b)(6). When a private party challenges a federal agency's

interpretation and application of a statute, the reviewing court uses a two-step inquiry. *Chevron*

*U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). First, the court

determines whether the statute in question is ambiguous with respect to the specific issue at hand.

*Id.* Whether a statute is ambiguous is determined by looking at the language itself, the specific

context in which it is used, and the broader context of the entire statute. *Robinson v. Shell Oil*

*Co.*, 519 U.S. 337, 341 (1997).

If a statute is ambiguous, the court then determines whether the agency's interpretation is based on a reasonable and permissible construction of the statute. *Chevron*, 467 U.S. at 843. Courts may look to the legislative history of a statute to help determine Congressional intent. *Green v. Comm'r*, 707 F.2d 404, 405 (9th Cir. 1983). Courts must interpret the statute as a coherent and harmonious regulatory scheme. FDA *v. Brown & Williamson Tobacco Group*, 529 U.S. 120, 133 (2000).

Generally, the statutory construction of an agency charged with administering the statutory scheme is entitled to considerable weight. *Chevron*, 467 U.S. at 844. Although the BIA's interpretation of an immigration statute is given deference, a court does not have to accept a BIA interpretation that goes against the plain meaning of the statute. *Randhawa v. Ashcroft*, 298 F.3d 1148, 1151 (9th Cir. 2002). If the BIA's interpretation of the statute meets the *Chevron* test, *Wang* is entitled to deference and the Court cannot grant Miss Co the relief she requests.

**I.**    **Chevron Analysis**

There are situations where § 1153(h)(3) provides for priority date retention when an alien's visa petition is automatically converted into an appropriate preference category. First, I ask if § 1153(h)(3) is ambiguous regarding which petitions are eligible for the benefits of automatic conversion and priority date retention and which petitions are not. If so, then I must determine whether the BIA's interpretation, based on the legislative history of the Child Status Protection Act ("CSPA") and the common usage of the phrases automatic conversion and priority date retention, is reasonable. If the BIA's interpretation is reasonable, *Wang* is entitled to deference and I cannot grant the relief Miss Co seeks.

PAGE 5 - OPINION AND ORDER

A.    ***Chevron Step One***

Under step one of the *Chevron* analysis, the court determines if Congress has spoken to the precise issue at hand. 467 U.S. at 842. When Congress includes specific language in one section of a statute but omits it in another section of the same statute, the court presumes that Congress acted intentionally in the exclusion. *Russello v. United States*, 464 U.S. 16, 23 (1983). Some courts have altered this presumption as it applies to cases applying the *Chevron* analysis. *See Cheney R.R. Co., Inc. v. Interstate Commerce Comm'n*, 902 F.2d 66, 69 (D.C. Cir. 1990); *see also Alliance for Cmty. Media v. FCC*, 529 F.3d 763, 779 (6th Cir. 2008). There, the courts presumed that Congress intended to leave the agencies discretion to fill gaps. *See Alliance for Cmty. Media*, 529 F.3d at 779.

The BIA determined that § 1153(h)(3) is ambiguous because it does not state the types of petitions eligible for automatic conversion and priority date retention. *See Wang*, 25 I&N Dec. at 33. I agree with the BIA's determination. *Wang's* thorough discussion of the CSPA provides the relevant background on the statute at issue. *See id.* The Immigration and Nationality Act provides that:

> (1) In general
> For the purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement [to be considered a child] shall be made using--
> > **(A)** the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent) . . . reduced by
> > **(B)** the number of days in the period during which *the applicable petition described in paragraph (2)* was pending.
> (2) Petitions described
> The petition described in this paragraph is--
> > **(A)** with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed under section 1154 of this title for classification of an

alien child under subsection (a)(2)(A) of this section; or

**(B)** with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under section 1154 of this title for classification of the alien's parent under subsection (a), (b), or (c) of this section.

(3) Retention of priority date

If the age of an alien is determined under paragraph (1) to be [twenty-one] years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153(h) (emphasis added)

Section 1153(h)(1) describes a delayed processing formula for determining if an alien is a child when the alien has aged-out due to administrative delays. In describing the petitions subject to this formula, § 1153(h)(1) refers to the "applicable petition language" found in § 1153(h)(2). Section 1153(h)(2) then describes two types of petitions. Read together, the two subsections provide the universe of petitions eligible for the delayed processing formula.

Unlike § 1153(h)(1), § 1153(h)(3) does not contain the same "applicable petition language", does not reference § 1153(h)(2), and does not contain any other language discussing which petitions are eligible for the benefits of automatic conversion and priority date retention contained therein. Applying established canons of statutory interpretation, I presume that Congress intentionally did not reference the applicable petition language in § 1153(h)(2) when discussing automatic conversion and priority date retention in § 1153(h)(3). Therefore, a reading of § 1153 on its face provides no guidance as to what petitions are eligible for the benefits in § 1153(h)(3). Further, I cannot discern what types of petitions are eligible by attempting to find a definition for either automatic conversion or priority date retention in the overall statutory scheme. The lack of any language describing which petitions qualify for automatic conversion and priority date retention makes § 1153(h)(3) ambiguous.

**B.**    *Chevron Step Two*

Although there is no precise formula for resolving a statutory ambiguity, the legislative history and other usage of the relevant terms in the statute help to shed light on what petitions Congress likely intended § 1153(h)(3) to address. The BIA's interpretation of § 1153(h)(3) is supported both by the legislative history behind the CSPA and the usage of the terms automatic conversion and priority date retention in immigration law generally. The BIA's interpretation of § 1153(h)(3) as discussed in *Wang* is a reasonable and permissible construction of § 1153(h)(3) and is therefore entitled to deference.

**1.    Legislative History**

An analysis of the legislative history of the CSPA demonstrates that the BIA's interpretation of § 1153(h)(3) is reasonable. Both a 2003 House Report on the CSPA and statements from members of the House in 2002 demonstrate that Congress's intent in passing the CSPA was to address Immigration and Naturalization Service ("INS")[5] administrative delays. *See* H. Rep. No. 107-807 (2003); *see also* 148 Cong. Rec. H4989-01.

The House report noted that "[w]ith the INS taking up to [three] years to process [I-485] applications, aliens who were under [twenty-one] when their [visa] petitions were filed often found themselves over [twenty-one] by the time their applications were processed." H. R. No. 107-807, at 55 (2003). If a petition is filed before a child turns twenty-one but "the INS does not get around to processing the adjustment of status application until after the child turns [twenty-one], the family is out of luck. . . . The child is being punished because of INS ineptitude . . .

---

[5]  In 2003, the INS's activities were split between three agencies and the INS was dissolved. The administration of immigration services became a part of the USCIS.

PAGE 8 - OPINION AND ORDER

[which] is not right." 148 Cong. Rec. H4989-01 (statement of Rep. Sensenbrenner). Further testimony indicated that the original text of the CSPA was expanded by the Senate "to cover other situations where alien children lose immigration benefits by 'aging-out' as a result of INS processing delays." 148 Cong. Rec. H4989-01 (statement of Rep. Jackson-Lee). The 2003 House report and statements from members of Congress do not discuss delays caused by visa allocation issues. Instead, the history above demonstrates that Congress's motivation in enacting the CSPA was focused on administrative delays within the INS.

Miss Co has not pointed to any legislative history showing Congress intended the CSPA to cover a broader range of aliens in order to support her interpretation of § 1153(h)(3). Under Miss Co's interpretation of § 1153(h)(3), automatic conversion and priority date retention apply to persons who never experienced the INS delays that the legislative history above suggests the CSPA was enacted to address. The broad application Miss Co advocates conflicts with the more narrow statements made throughout the legislative process. The legislative history of the CSPA supports the reasonableness of the BIA's interpretation in *Wang*.

### 2.    General Application in Immigration Law

The general use of the phrases automatic conversion and priority date retention in immigration law further demonstrate that the BIA's interpretation of § 1153(h)(3) is reasonable.

### a)    BIA Interpretation

In *Wang*, the BIA looked at the recognized meaning of the phrases automatic conversion and priority date retention. *See* 25 I&N Dec. at 34. The two phrases are used in the Federal Regulations concerning immigrant visa petitions. *See* 8 C.F.R. § 204.2(i) (2010); *see also* 8 C.F.R. § 204.2(a)(4) (2010). Although these regulations are promulgated by the agency, they still

PAGE 9 - OPINION AND ORDER

provide guidance as to the typical usage of the terms. *See Ford Motor Credit Co. v. Cenance*, 452

U.S. 155, 158 n. 3 (1981) (noting that the regulations promulgated by the agency responsible for

administering a statute receive considerable respect during the statutory interpretation process).

The regulations use the phrase automatic conversion in connection with events such as changes

in marital status. *See* 8 C.F.R. § 204.2(i)(1)(i). Upon an event such as a marriage, automatic

conversion enables a visa petition to convert from one category to another without the need to

file a second petition. *Id.* The language of the regulation instructs the INS to regard the petition

as having been filed in another category without requiring the petitioner to take any action. *Id.*

The regulations also provide guidance as to the typical implementation of priority date

retention. For example, one regulation promulgated by the USCIS addresses a child aging-out

before the issuance of a visa on a second-preference spousal petition. *See* 8 C.F.R. § 204.2(a)(4).

"Under [the regulation], if a child ages out prior to the issuance of a visa to the principal

beneficiary, a separate petition for that son or daughter is then required, but the original priority

date is retained if the subsequent petition is filed by the same petitioner." *Wang*, 25 I&N Dec. at

34. Stated another way, the regulations provide that priority date retention is "limited to a lawful

permanent resident's son or daughter who was previously eligible as a derivative beneficiary

under a second-preference spousal petition filed by that same lawful permanent resident." *Id.*; *see

also* 8 C.F.R. § 204.2(a)(4). The ability to retain a petition's priority date under this regulation is

expressly limited to cases where both petitions are filed by the same individual. *See id.*

The Federal Regulations only afford the benefits of automatic conversion and priority

date retention in very narrow circumstances for specific types of visa petitions. In *Wang*, the BIA

found no clear indication that Congress intended to expand on the narrowly prescribed categories

eligible for these benefits. *See* I&N Dec. at 36. Although not authoritative on Congressional intent, the typical use of these terms in the Federal Regulations speaks to the reasonableness of the BIA's narrow interpretation of what petitions are eligible for automatic conversion and priority date retention under § 1153(h)(3).

**b)**      **Miss Co's Interpretation**

The BIA's interpretation of the terms automatic conversion and retention is consistent with their usage throughout other areas of immigration law. On the other hand, Miss Co's interpretation of automatic conversion leads to confusion. Currently, there are only preference categories for (1) unmarried sons and daughters of U.S. citizens, (2) spouses, children, and unmarried sons and daughters of legal permanent residents, (3) married sons and daughters of citizens, and (4) siblings of citizens. *See* 8 U.S.C. § 1153. Therefore, when Miss Co turned twenty-one, there was no appropriate category for her petition to convert into because there is no preference category for the niece of a U.S. citizen.

Extending the benefit of priority date retention to Miss Co results in priority date retention having inconsistent usages throughout immigration law. Under Miss Co's argument, priority date retention applies to her even though the 2006 Petition was filed by a different petitioner. *See* 8 C.F.R. § 204.2(a)(4) (limiting priority date retention to situations in which the first and second petitions are filed by the same petitioner). The BIA's interpretation provides a more consistent and harmonious application for automatic conversion and priority date retention throughout immigration law.

**C.**      *Other Authority*

Although not binding on this Court, it is worth noting that other courts applying the

*Chevron* test to *Wang* have found the BIA's decision appropriate and entitled to deference. *See Zhang v. Napolitano*, 663 F. Supp. 2d 913 (C.D. Cal. 2009); *see also Costelo v. Chertoff*, No. SA08-00688-JVS, 2009 WL 4030516 (C.D. Cal. Nov. 10, 2009).

## CONCLUSION

The BIA's interpretation of § 1153 is entitled to deference. Section 1153(h)(3) is ambiguous regarding what petitions are eligible for automatic conversion and priority date retention. The legislative history surrounding the CSPA supports the agency's narrow reading of the statute. Further, based on the historical usage of the terms automatic conversion and retention, the BIA was reasonable in its interpretation of the two phrases at issue in Miss Co's case. Under *Chevron*, which gives deference to the BIA's interpretation of immigration laws, I find that the BIA's decision in *Wang* is based on a reasonable and permissible construction of § 1153(h)(3). Therefore, the BIA did not err when it refused to allow Mr. Co to retain the 1981 Petition date for his 2008 Petition or when it denied Miss Co's Form I-485. Applying *Wang*'s reasoning to this claim, Miss Co cannot state a claim against USCIS for failing to assign her petition a 1981 priority date.

For the reasons given above, I GRANT defendant USCIS's Motion to Dismiss (#19).

IT IS SO ORDERED.

DATED this  23rd  day of April, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

PAGE 12 - OPINION AND ORDER